IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GERALD RAY HOFFMAN,

    Plaintiff,
v.                                            CASE NO. 1:17-cv-302-MW-GRJ

DR. ASBELTI LLORENS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("DOC") confined at Cross City Correctional Institution, initiated this case by filing complaint pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding pursuant to an amended complaint, ECF No. 10 (hereafter "Complaint"). Plaintiff's claims stem from the medical care he has received at Cross City CI. This case is now before the Court on the motions to dismiss of Defendants Dr. Asbelti Llorens, Health Administrator Roberta Wolf, Centurion of Florida, LLC, and the Secretary of the DOC. ECF Nos. 19, 20, 22, 23. Plaintiff has filed a response in opposition to the motions. ECF No. 36. For the following reasons, it is respectfully recommended that the motions to dismiss be granted because the Complaint fails to state a claim upon which relief may be granted.

## I. Plaintiff's Allegations

The factual allegations of the Complaint may be summarized as follows. Plaintiff alleges that he began to suffer from a scalp condition in November 2015. The condition worsened in April 2016 and then became "very serious" in July 2016. Plaintiff alleges that from July 2016 to November 2017, his scalp exuded yellow fluid and blood, causing his head to stick to his pillow at night, and he experienced hair loss. Between September 2016 and September 2017, Plaintiff developed welts or knots on his head that leaked fluid and would "film over and crust up". The condition felt like "fire ants or bees" were crawling under Plaintiff's flesh. Between April 2017 and September 2017, patches of skin came off Plaintiff's scalp. Between March 2017 and August 2017, Plaintiff developed a large scabbed area on the left side of his head. Plaintiff alleges that he later discovered that he had "bacteria veins" all over his head. He contends that at an April 2017 examination he told Dr. Llorens that the condition was worsening and Dr. Llorens stated "I don't care, write a grievance." ECF No. 10 at 4-5.

In June 2017, a culture of Plaintiff's wound revealed the presence of "Staphylococcus aureus, Klebsiella Oxytoca, and heavy growth of E. Coli."

Plaintiff alleges that his life was "in jeopardy for some form of septic infection". Plaintiff claims that he experienced sinusitis, flu-like symptoms, chills, pain when urinating, loss of appetite, nausea, confusion, anxiousness, restlessness, and back pain for 16 months. *Id.* at 5-6.

Plaintiff alleges that Dr. Asbelti Llorens "misdiagnosed" his condition as folliculitis, tenes capus, head lice, and psoriasis. Plaintiff contends that Dr. Llorens never mentioned or diagnosed Plaintiff with the conditions identified in the culture. Plaintiff alleges that his family made phone calls in August 2017 to find out why Plaintiff was not receiving "proper" medical treatment. *Id.* at 6.

In August 2017, Dr. Llorens performed a biopsy, which revealed allergic and phototoxic dermatitis. Plaintiff alleges that it is "unlikely" that Dr. Llorens knew of the different types of dermatitis "or their etiologies", and that Dr. Llorens should have referred Plaintiff to a dermatologist. Independent of Dr. Llorens' treatment, Plaintiff obtained "gentamicin sulfate antibiotic ointment" which he says greatly improved his condition in two weeks. *Id.* at 7.

In September 2017, Dr. Llorens took pictures of Plaintiff's scalp to be sent to "some unknown physician's group" who forwarded the pictures to

"an unknown dermatologist" who then prescribed a "Duoderm" patch for Plaintiff. Plaintiff alleges that Dr. Llorens justified this course of treatment on the basis that the DOC and Centurion did not have a dermatologist available for inmates. *Id.* at 7-8.

Plaintiff contends that he learned when reviewing his medical records that Dr. Llorens had not referred his case to a "physician's group" or dermatologist but instead had referred the case to the Regional Medical Director ("RMD"). According to Plaintiff, the RMD prescribed the "wrong medications" because Dr. Llorens told the RMD that Plaintiff had an "inflamed ulcer" rather than bacterial infections. *Id.* at 8.

Plaintiff alleges that for a period of 16 months he was ridiculed by other inmates due to the appearance of his hair and scalp, and he was not allowed to get haircuts in the inmate barber shop. In October 2017, Plaintiff attended sick call because the Duoderm patch was making his condition worse. A "fill-in" physician, Dr. Bala, discontinued the patch and wrote prescriptions for Gentamicin Sulfate antibiotic ointment and Septra (SMZ800-160) pills. Plaintiff's head "almost healed" within 15 days. Later the same month, Plaintiff saw Dr. Llorens who refused to write a follow-up order for the ointment and pills. Dr. Llorens "attempted to claim" that he

had written Plaintiff prescriptions for the antibiotics Doxycycline and Levofloxacin. Plaintiff alleges that the Doxycycline was for "lumps" that formed on his head and neck and that the Levofloxacin would have been "useless" for E.Coli. *Id.* at 8-9.

Plaintiff submitted more sick calls in November 2017 because his condition had worsened again. He was seen by a nurse on November 20, 2017, and December 1, 2017. Plaintiff alleges that at those visits Dr. Llorens "refused" to write orders for antibiotics or other medications. Plaintiff states that all told, he filed "approximately 20 sick calls" for his condition over the course of 16 months. During this time, Plaintiff alleges that he received a "barrage of useless medications" prescribed by Dr. Llorens, which included: Diflucan; Nystatin Cream; Bacitracin Ointment; Selenium Sulfide shampoo; Tera-Gel Tar shampoo; Betamethasone Dipropionate Cream; Hydrocortisone Cream; Doxycycline Antibiotic; Triamcinolone Cream; and the Duoderm patch. Plaintiff states that these treatments made him a "human test subject". *Id.* at 11.

Plaintiff asserts that Dr. Llorens "places his medical ineptitude upon the prison inmates". Dr. Llorens referred Plaintiff without his "consent or knowledge" to the site psychologist for evaluation. Plaintiff did not want a

psychological referral and wrote a grievance.  *Id.* 10-11.  Plaintiff contends that Dr. Llorens misdiagnosed his condition, prescribed the "wrong medications", and "didn't care" about Plaintiff.  *Id.*  He alleges that the "multiple misdiagnosis" of his condition and "multiple wrong medications" for 16 months caused him pain, humiliation, and psychological distress.  *Id.* at 11-12.

On December 11, 2017, Plaintiff was sent to a dermatologist, Dr. Solano, at Lake Butler Medical Center.  Dr. Solano prescribed medication and ordered a follow-up visit in four to five weeks.  One week later, on December 18, Plaintiff saw Dr. Llorens who allegedly told Plaintiff that he would not send him back to Dr. Solano for a follow-up.  *Id.* at 12-13.

Plaintiff contends that the Defendants were deliberately indifferent to his serious medical needs in violation of the 8th Amendment.  He asserts that Defendants' acts included:  "poor quality or inadequate medical care; multiple misdiagnoses of medical condition; multiple acts of misprescribing medication; multiple acts of patient neglect; medical maltreatment; permanent physical damage to Plaintiff's head area; psychological and emotional distress due to the Plaintiff's medical condition; deliberate indifference to Plaintiff's pain and suffering; wanton disregard of medical

condition; ignoring obvious ongoing medical condition; failure to provide proper treatment of medical condition; failure to investigate . . . to make informed judgment; extremely long delay of proper medical treatment; making medical decisions based on the incorrect medical factors; and medical judgments so bad, it was not medical judgment at all." *Id.* at 16-17. For relief, Plaintiff seeks $500,000 in compensatory damages, $500,000 in punitive damages, and that the DOC be ordered to provide dermatology care as needed, in addition to other relief. *Id.* at 18.

Dr. Llorens', Roberta Wolf's, and Centurion's motions to dismiss argue that the Complaint should be dismissed because: (1) Plaintiff fails to state a claim upon which relief may be granted; (2) The claims against Dr. Llorens and Ms. Wolf in their individual capacities are barred by the doctrine of qualified immunity; and (3) Plaintiff failed to exhaust administrative remedies before filing suit. ECF Nos. 19, 20, 22. The Secretary of the DOC's motion asserts that: (1) To the extent Plaintiff asserts official-capacity claims for compensatory and punitive damages, the Complaint fails to state a claim upon which relief can be granted and is barred by Eleventh Amendment immunity; (2) The Complaint fails to state a § 1983 claim against the Secretary in her individual capacity; and (3) The

Court does not have authority to award the remedies sought by Plaintiff, apart from his claim for damages. ECF No. 23.

## II.  Standard of Review

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570. Further, "*pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir.2008).

To state a claim under § 1983, a plaintiff must allege: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law. *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

The seriousness of a medical need is an objective inquiry. *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses

a substantial risk of serious harm. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citations and internal quotation marks omitted).

Whether the defendants acted with deliberate indifference is a subjective inquiry. *Kelley*, 400 F.3d at 1284. Each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir.2008). To establish deliberate indifference, a plaintiff must allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans*, 626 F.3d at 564 (alteration in original) (internal quotation marks omitted). In determining whether an individual evinced deliberate indifference, the courts have considered: (1) indifference by prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; and (3) interference with treatment once prescribed. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

*Page 11 of 17*

A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need" so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for

grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

### III.  Discussion

In this case, accepting the allegations of the Complaint as true, Plaintiff's allegations fail to state a claim for deliberate indifference based on a denial or delay of medical treatment. The parties do not dispute that Plaintiff's condition was "serious" for purposes of the motions to dismiss.

Plaintiff's allegations establish that he suffered from a painful and difficult-to-treat scalp condition that plainly necessitated medical attention. However, Plaintiff's factual allegations also reflect that he received ongoing treatment for this condition by Defendant Dr. Llorens and other prison medical staff.  During the 16-month time period at issue – July 2016 to November 2017, when Plaintiff alleges his condition became "very serious" – Plaintiff admits that he accessed sick call at least 20 times.  Plaintiff concedes that over the course of his treatment Dr. Llorens prescribed a variety of medications for Plaintiff including: Diflucan; Nystatin Cream; Bacitracin Ointment; Selenium Sulfide shampoo; Tera-Gel Tar shampoo; Betamethasone Dipropionate Cream; Hydrocortisone Cream; Doxycycline Antibiotic; Triamcinolone Cream; and the Duoderm patch.  ECF No. 10 at 11.  Plaintiff concedes that Dr. Llorens performed a skin culture in June 2017 and a biopsy in August 2017, and then submitted Plaintiff's results and photographs to the RMD for further review in September 2017.  *Id.* at 7-8.  Plaintiff alleges that the RMD prescribed the "wrong medications" because Dr. Llorens identified his condition as an "ulcer" rather than a "bacterial infection," but even accepting this claim as true it amounts to no more than a disagreement with Dr. Llorens' medical diagnosis.

Plaintiff was subsequently referred to a dermatologist, Dr. Solano, at RMC-Lake Butler in December 2017. On December 11, 2017, Dr. Solano prescribed a different antibiotic for Plaintiff and made other changes to his medication. *Id.* at 12. Plaintiff saw Dr. Llorens one week later for a follow-up and Plaintiff alleges that at that time Dr. Llorens stated that he would not send Plaintiff back to Dr. Solano. Plaintiff contends that Dr. Llorens' decision not to send him back to Dr. Solano "makes no medical sense," but he has alleged no facts suggesting that Dr. Llorens' decision was based on anything other than his medical judgment. *See id.*

Plaintiff claims that during an examination by Dr. Llorens in April 2017, Plaintiff complained that his condition was getting worse and his current medication was not helping. Plaintiff alleges that Dr. Llorens responded by stating "I don't care, write a grievance," thus evincing deliberate indifference to Plaintiff's condition. *Id.* at 4. But this statement, even if true, cannot be read in isolation from Plaintiff's other allegations. Following that April 2017 visit, Plaintiff's allegations reflect that Dr. Llorens *did* continue treating Plaintiff with a variety of medications over the course of the next eight months, as described *infra*.

Plaintiff repeatedly asserts that Dr. Llorens "misdiagnosed" his condition, refused to write prescriptions for specific antibiotics requested by Plaintiff, and prescribed "useless" medications. Although Plaintiff conclusionally asserts that Dr. Llorens was deliberately indifferent to his needs, at base his claims sound in negligence or medical malpractice, which are not cognizable under §1983. Plaintiff argues that he should have received a different diagnosis or treatment, but a disagreement with Dr. Llorens' medical judgment is insufficient to state a claim for deliberate indifference. *Adams*, 61 F.3d at 1545 (question whether defendant should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107)); *Waldrop*, 871 F.2d at 1033 ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'")

Thus, the Court concludes that Plaintiff's Complaint fails to state a cognizable claim for a violation of his Eighth Amendment rights against *any* named Defendant stemming from the treatment for his scalp condition.

Further, the Complaint is devoid of any allegations against Defendant Wolf, whom Plaintiff identifies only as viewing a wound on his head on one occasion.  ECF No. 10 at 5.  There are no other factual allegations relating to Wolf in the remainder of the Complaint.  In the same vein, Plaintiff conclusionally alleges that the DOC Secretary and Centurion LLC are liable to him on a deliberate-indifference theory, but there is no *respondeat superior* liability under §1983 and there are no factual allegations suggesting that Plaintiff could assert a cognizable §1983 claim against the Secretary or Centurion under any other theory.[1]

### IV.  Recommendation

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' motions to dismiss the Complaint for failure to state a claim upon which relief may be granted, ECF Nos. 19, 20, 22, 23, be **GRANTED**.

**IN CHAMBERS** this 23rd day of January 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[1] The Court is unable to conclude that Plaintiff failed to exhaust administrative remedies before filing suit.  Plaintiff has submitted numerous administrative remedy documents that were not included in the Defendants' exhibits, and it therefore appears that Defendants' exhibits are incomplete.  *See* ECF Nos. 19, 20 22, 23, and 36.  Because the Court concludes that the Complaint fails to state a cognizable claim, it is unnecessary to determine whether Plaintiff exhausted his administrative remedies.

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**